# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

---

| | |
|---|---|
| YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee, | Case No. 5:22-cv-10975-DPH-JJCG |
| Plaintiff, | Hon. Denise Page Hood (presiding) |
| v. | |
| JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, LAWRENCE KESTENBAUM, in his official capacity as Washtenaw County Clerk, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk. | Hon. Jonathan J.C. Grey (referral) |
| Defendants. | |

---

Hannah Stocker (P82847)
Attorneys for Plaintiffs
23332 Farmington Road #98
Farmington, MI 48336
(248) 252-6405 (phone)
hannah@stockerlawpllc.com

## EX PARTE MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

Plaintiff, Ypsilanti Township Citizens for Responsible Government, by and through their attorneys, hereby move for a preliminary injunction and/or temporary restraining order pursuant to Fed. R. Civ. Pro. 65(a) and 65(b) against Defendants, Jocelyn Benson, Heather Jarrell Roe, as Ypsilanti Township Clerk, Jocelyn Benson,

in her official Capacity as Secretary of State, and Lawrence Kestenbaum, in his official capacity as Washtenaw County Clerk, prohibiting enforcement of Mich. Comp. Laws § 333.27956(1) until disposition of the present matter on the merits.

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Grant Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order:

(2) Order Plaintiff's ballot initiative be placed on the August 2, 2022 ballot;

(3) Award Plaintiff its attorney fees in having to bring this lawsuit and Motion; and

(4) Any other relief this Court deems just.

Respectfully Submitted,

Dated:  May 6, 2022

/s/ Hannah Stocker

By: _____

Hannah Stocker (P82847)
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| YPSILANTI TOWNSHIP CITIZENS FOR RESPONSIBLE GOVERNMENT, ballot question committee, | Case No. 5:22-cv-10975-DPH-JJCG |
| Plaintiff,<br><br>v. | Hon. Denise Page Hood (presiding) |
| JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, LAWRENCE KESTENBAUM, in his official capacity as Washtenaw County Clerk, and HEATHER JARRELL ROE, in her official capacity as Ypsilanti Township Clerk. | Hon. Jonathan J.C. Grey (referral) |
| Defendants. | |

| | |
|---|---|
| Hannah Stocker (P82847)<br>Attorneys for Plaintiffs<br>23332 Farmington Road #98<br>Farmington, MI 48336<br>(248) 252-6405 (phone)<br>hannah@stockerlawpllc.com | |

## BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

## CONCISE STATEMENT OF ISSUES PRESENTED

To warrant a preliminary injunction, Plaintiff must show (1) a strong likelihood of success on the merits; (2) that it would suffer irreparable injury absent the injunction; (3) that the injunction would not cause substantial harm to others; and (4) that the injunction is in the public interest. Has Plaintiff shown that Mich. Comp. Laws § 333.27956(1) is unconstitutional as applied to itself and other similarly situated parties, as it places an undue burden on ballot access and is not narrowly tailored to advance a legitimate government interest?

Has Plaintiff shown that Mich. Comp. Laws § 333.27956(1) deprives it of procedural due process by not providing a mechanism to challenge a municipal officer's determination that its petition is insufficient?

## <u>CONTROLLING AUTHORITY FOR RELIEF SOUGHT</u>

U.S. Const. amend I: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend XIV, § 1: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

*Anderson-Burdick Test*: Under this test, courts must analyze the "character and magnitude of the asserted injury" to the plaintiff's constitutional rights in relation to the defendant's interest in enforcing the regulation. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

*Mathews v. Eldridge Test*: In determining what process is due, the court should assess three factors: (1) the private interest that will be affected by the official action; (2) the risk of deprivation of such interest through procedures used; and (3) the government's interest  in maintaining the procedures used. 424 U.S. 319 (1975).

# TABLE OF CONTENTS

I.     INTRODUCTION .......................................................................... 1

II.    BACKGROUND & FACTS ........................................................ 2

    A. The Michigan Taxation and Regulation of Marihuana Act  2

    B. The Initiative ...................................................................... 4

III.   LAW & ARGUMENT .................................................................. 5

    A. Plaintiff has demonstrated a high likelihood of success on the merits. ........................................................................ 7

        i.   Mich. Comp. Laws § 333.27956(1) violates the right to vote upon ballot-related legislation and ballot access. ........................................................... 7

        ii.  Mich. Comp. Laws § 333.27956(1) violates Plaintiff's right to procedural due process. .......... 11

    B. Plaintiff will suffer irreparable injury absent an injunction. ......................................................................... 17

    C. The grant of a preliminary injunction serves the public interest, as it will prevent the application of an unconstitutional law to similarly situated plaintiffs and cause little to no harm to the public interest. ...................... 18

IV.   CONCLUSION ........................................................................... 19

# <u>INDEX OF AUTHORITIES</u>

**Cases:**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)........................................... 8, 9

*Barrow v City of Detroit Elect. Comm.*, 301 Mich. App. 404 (Mich. Ct. App. 2013) ................................................................................................ 15

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) ................................. 6

*Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970) ....................................... 13

*Buckley v. Amer. Const. Law Foundation*, 525 U.S. 182 (1999) .................. 8

*Burdick v. Takushi*, 504 U.S. 428 (1992) ....................................................... 9

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006) ............................................................................................... 18

*Codd v.* Brown, 949 F.3d 879 (6th Cir. 1991)............................................... 11

*Connection Distrib. Co. v. Reno*, 154 F.3d 281(6th Cir. 1998)............. 17, 18

*Eldrod v. Burns*, 427 U.S. 347 (1976)........................................................... 17

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ....................................... 19

*Grabow v. Macomb Twp*, 270 Mich. App. 222 (Mich. Ct. App. 2006) ................................................................................................ 15

*Graveline v. Johnson*, 336 F. Supp.3d 801 (E.D. Mich. 2018) ................. 5, 6

*Graveline v. Benson*, 992 F.3d 524 (6th Cir. 2021) ..................................... 10

*Illinois State Bd. of Elections v. Socialists Workers Party*, 440 U.S. 173 (1979) ................................................................................................ 9, 10

*Libertarian Pty of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006).......... 8, 9

*Libertarian Pty of Ohio v. Husted*, 751 F.3d 403 (6th Cir. 2014) .......... 17, 18

*Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378 (6th Cir. 2020)
.................................................................................................. 11

*Mathews v. Eldridge*, 424 U.S. 319 (1975) ........................................... 12, 13

*Meyer v. Grant*, 486 U.S. 414; 108 S. Ct. 1886; 100 L.Ed.2d 425 (1988)..... 8

*Newsom v. Norris*, 888 F.2d 371 (6th Cir. 1989) ........................................ 17

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................ 18

*N.Y. Times v United States*, 403 U.S. 713 (1971)........................................ 17

*Pursuing Am.'s Greatness v. F.E.C.*, 831 F.3d 500, 511 (D.C. Cir. 2016) ......
................................................................................................ 18, 19

*Schmitt v. Husted*, 341 F.Supp.3d 784, 791 (S.D. Ohio 2018)................. 9, 15

*Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 294 (6th Cir. 1993)
.............................................................................................. 9, 10

*Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968) ........................................... 8

**Statutes:**

Mich. Comp. Laws § 42.1 et seq. ................................................................ 14

Mich. Comp. Laws § 125.25(7).................................................................... 13

Mich. Comp. Laws § 168.471 ..................................................................... 15

Mich. Comp. Laws § 168.472 ..................................................................... 15

Mich. Comp. Laws § 168.476 ..................................................................... 18

Mich. Comp. Laws § 168.479(1).................................................................. 14

Mich. Comp. Laws § 168.488 ................................................................. 3, 14

Mich. Comp. Laws § 168.482 ........................................................ 3, 4, 12, 14

Mich. Comp. Laws § 333.27951 et  seq. ..................................................... 1, 2

Mich. Comp. Laws § 333.27952 ................................................................. 2

Mich. Comp. Laws § 333.27956 ........................................................... 5, 13

Mich. Comp. Laws § 333.27956(1).......... 1, 2, 3, 6, 10, 12, 13, 14, 15, 16, 19

**Constitutions**

U.S. Const, amend. I ............................................................................ 7

U.S. Const, amend. XIV ..................................................................... 7, 11

**Court Rules**

Fed R. Civ. Pro. 65(b) ........................................................................... 7

Mich Court R. 3.305 ......................................................................... 10, 16

## I.    INTRODUCTION

Once imparted to the people, the right to initiative cannot be taken away, absent a legitimate government interest. The Michigan Taxation and Regulation of Marihuana Act ("MRTMA"), Mich. Comp. Laws § 333.27951 et seq., has imparted the people with the ability to limit or prohibit the number of recreational marihuana establishments within municipal boundaries. *See* Mich. Comp. Laws § 333.27956(1). However, it offers no mechanisms to enforce that right. Stated another way, MRTMA petitioners have no remedy against a clerk's determination that its petition is insufficient. Plaintiff, Ypsilanti Township Citizens for Responsible Government ("Plaintiff"), a ballot committee formed for the purpose of petitioning to allow Ypsilanti Township's voters to decide if they want recreational marihuana establishments within the Township, herein moves for a temporary restraining order and injunction to prevent the invalidation of Plaintiff's Initiative Petition, as it has been afforded no opportunity to challenge the Township Clerk's determination.

Plaintiff has a high likelihood of success on the merits, as the lack of procedural safeguards effectively bar Plaintiff from obtaining ballot access when a clerk determines that a petition does not contain enough signatures. Given that implementation of procedural safeguards would be minimally burdensome on the government, it is likely that Plaintiff will prevail on the merits. Additionally, the harm to Plaintiff's First and Fourteenth Amendment rights if this statute is enforced

substantially outweighs the government's interest in regulating elections. As such, a preliminary injunction and/or temporary restraining order should issue in this matter.

## II.    BACKGROUND & FACTS

### A. The Michigan Taxation and Regulation of Marihuana Act

In November 2018, Michigan electors voted to adopt the Michigan Taxation and Regulation of Marihuana Act ("MRTMA"), Mich. Comp. Laws § 333.27951 et. seq. This initiated legislation authorized the recreational use of marihuana in the State of Michigan and created a system to license, regulate, and tax businesses licensed to sell recreational marihuana under Michigan law. Mich. Comp. Laws § 333.27952.  MRTMA is broad ranging and automatically "opts in" municipalities to unlimited marihuana businesses within their boundaries. *See* Mich. Comp. Laws § 333.27956(1). However, this "opt-in" is not irrevocable and "a municipality may completely prohibit or limit the number of marihuana establishments within its boundaries." Mich. Comp. Laws § 333.27956(1).

Mich. Comp. Laws § 333.27956(1) expressly imparts individuals with the right to set the number of marihuana establishments within a municipality's boundaries. Pursuant to its dictates:

> Individuals may petition to initiate an ordinance to provide for the number of marihuana establishments allowed within a municipality or to completely prohibit marihuana establishments within a municipality, and such ordinance shall be submitted to the electors of the municipality at the end regular election when a petition is signed by qualified electors in the municipality in a number greater than 5%

of the votes cast for governor by qualified electors in the municipality at the last gubernatorial election. A petition under this subsection is subject to section 488 of the Michigan election law, 1954 PA 116, MCL 168.488. Mich. Comp. Laws § 333.27956(1).

Section 488 of the Michigan Election Law notes that Mich. Comp. Laws § 168.482(1), (4), (5), and (6) "apply to a petition to place a question on the ballot before the electorate of a political subdivision under a statute that refers to this section, and to the circulation and signing the petition." Mich. Comp. Laws § 168.488.[1] Therefore, if a petition meets the mandates of Mich. Comp. Laws §

---

[1] The applicable sections of Mich. Comp. Laws § 168.482 read as follows:

   (1)  Each petition under this section must be 8-1/2 inches by 14 inches in size.

   (4) The following statement must appear beneath the petition heading:

> "We, the undersigned qualified and registered electors, residents in the _____ congressional district in the state of Michigan, respectively petition for (amendment to constitution) (initiation of legislation) (referendum of legislation) (other appropriate description).".

   (5) The following warning must be printed in 12-point type immediately above the place for signatures, on each part of the petition:

WARNING

> A person who knowingly signs this petition more than once, signs a name other than his or her own, signs when not a qualified and registered elector, or sets opposite his or her signature on a petition, a date other than the actual date the signature was affixed, is violating the provisions of the Michigan election law.

   (6) Subject to subsections (7) and (8), the remainder of the petition form must be as provided following the warning to electors signing the petition in section 544c(1). In addition, the petition must comply with the requirements of section 544c(2).

   (7) Each petition under this section must provide at the top of the page check boxes and statements printed in 12-point type to clearly indicate whether the

168.488 and is signed by the requisite number of voters, it must be placed on the ballot in the next regular election.

## B. The Initiative

Plaintiff is a ballot question committee formed for the purpose of supporting a ballot initiative (the "Initiative Petition") to completely prohibit marihuana establishments in the Charter Township of Ypsilanti (the "Township").[2] Between March 12, 2022 and April 25, 2022, Plaintiff reached out to the citizens of the Township, seeking to gather signatures in support of the Initiative. Two thousand eight hundred ninety-six citizens, approximately 12% of the voting electorate of the Township in the last gubernatorial election[3], signed their names in favor of the proposition.

Having obtained what it believed to be a sufficient number of signatures to be placed on the ballot for the next general election, on April 26, 2022, Plaintiff submitted its Initiative to Township Clerk, Heather Jarrell Roe. On April 29, 2022,

---

circulator of the petition is a paid signature gatherer or a volunteer signature gatherer.

(8) Each petition under this section must clearly indicate below the statement required under subsection (7) and be printed in 12-point type that if the petition circulator does not comply with all of the requirements of this act for petition circulators, any signature obtained by that petition circulator on that petition is invalid and will not be counted.

[2] Ypsilanti Township is a Charter Township, but does not have its own charter. Therefore, the Charter Township Act steps in a place of a charter.

[3] There were 23,856 votes casts for governor in Ypsilanti Township in the 2018 election.

Ms. Jarrell Roe, sent Plaintiff a letter, indicating that the Initiative Petition submitted did not meet the 5% threshold set forth in MCL 333.27956 and would not be placed on the ballot. Ex. 1 – Correspondence from Heather Jarrell Roe. On May 2, 2022, Plaintiff's Counsel reached out to the Township City Attorney, Dennis McLain, and Township litigation attorney, James Tamm, for a copy of the signature report. Ex. 2 – Email from H. Stocker to J. Tamm and D. McLain. Neither Township attorney responded to Plaintiff's Counsel's request.

The next regular election in the Township is set to be held on August 2, 2022. Ballot wording of county and local proposal to be presented at the August primary must be certified by May 10, 2022 at 4:00 PM, pursuant to Mich. Comp. Laws § 168.646a. Ex. 3 – Michigan Election Dates Guidance 2022.

As a result of this impending deadline and no means to challenge the Township Clerk's determination, Plaintiff has brought this Motion for Preliminary Injunction and Temporary Restraining Order, seeking to enjoin enforcement of the 5% requirement and have Plaintiff's Initiative placed on the ballot for the August 2, 2022 election.

## III.   LAW & ARGUMENT

When considering a motion for preliminary injunction, a district court should balance the following factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury

absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of an injunction. *Graveline v. Johnson*, 336 F. Supp.3d 801, 807 (E.D. Mich. 2018). "In First Amendment cases, 'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits [since] the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action.'" *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (citations omitted). A preliminary injunction should be granted if a plaintiff demonstrates that the circumstances demand it. *Graveline*, 336 F. Supp.3d at 807.

Given that Mich. Comp. Laws § 333.27956(1) effectively bars Plaintiff from access to the ballot by providing no post-deprivation remedy, there is a strong likelihood of success on the merits. Coupled with the fact that the voters of the Charter Township will be disenfranchised because of the lack of procedural safeguards and the government's minimal interest in not providing a safeguard, a preliminary injunction should issue.

Additionally, a court may issue a temporary restraining order without written or oral notice to the adverse party if (1) specific facts in an affidavit or verified complaint clearly show immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the

movant's attorney certifies in writing any efforts made to given notice and the reasons why it should not be required. Fed. R. Civ. Pro. 65(b).

Given the impending ballot question certification deadline, Plaintiff will suffer irreparable harm if forced to wait for the adverse party to be heard in opposition. Plaintiff has attached hereto an Affidavit setting out the potential grievances. See Ex. 4. Additionally, Plaintiff's has contacted counsel for the Township on numerous occasions, asking for information to enable it to take steps to attempt to remedy the signature deficiencies and its concurrence in this action. Plaintiff reached out to Defendants in this action on May 6, 2022 for their concurrence in the relief requested herein. See Ex. 5. However, no response has been received.

Therefore, a preliminary injunction and/or temporary restraining order is warranted.

**A. Plaintiff has demonstrated a high likelihood of success on the merits.**

    **i.    Mich. Comp. Laws § 333.27956(1) violates the right to vote upon ballot-related legislation and ballot access.**

The First Amendment provides that Congress "shall make no law . . . abridging the freedom of speech, or of the press, or the right of people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend I. Through the Due Process Clause, the Fourteenth Amendment extends these protections against actions of the state government. U.S. Const. amend. XIV. As

such, neither federal nor local government can enact laws that infringe on the constitutional protections of the First Amendment.

A fundamental cornerstone of the First Amendment is the right to free political speech and association. *See Libertarian Pty of Ohio v. Blackwell*, 462 F.3d 579, 585 (6th Cir. 2006). These freedoms are directly tied to an elector's right to "associate for the advancement of political beliefs" and "cast [his] votes effectively." *See id.* (quoting *William v. Rhodes*, 393 U.S. 23, 30 (1968)). An individual cannot partake in political speech absent the opportunity to do so. *See id.* (noting that "[t]he right to cast an effective vote 'is of the most fundamental significance under our constitutional structure.'"). Given that political speech directly derives from a party's ability to vote, laws cannot limit a citizen group's access to the ballot in an unduly burdensome manner. *See e.g. Anderson v. Celebrezze*, 460 U.S. 780 (1983) (holding Ohio statute prevents voters from expressing their support for independent candidate by barring him from ballot access); *Blackwell*, 462 F.3d at 582 (holding that requirement that all minor political parties file a petition with the Secretary of State 120 days in advance of the primary prevents group from gaining access to general election ballot).

Many citizens groups gain ballot access through petitioning, whether it be for initiative or referendum. *See e.g., Buckley v. Amer. Const. Law Foundation*, 525 U.S. 182, 188 (1999). This process, in and of itself, involves political speech. *Meyer v.*

*Grant*, 486 U.S. 414, 421-422 (1988). While the right to ballot initiative is not a federal constitutional right, "once a state creates an initiative, the initiative becomes a means by which voters can communicate with other voters; therefore, the state must ensure that the process does not violate federal constitutional rights." *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 294 (6th Cir. 1993). Therefore, the state cannot pass laws that severely burden "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters to cast their votes effectively." *Illinois State Bd. of Elections v. Socialists Workers Party*, 440 U.S. 173, 184 (1979); *see also Schmitt v. Husted*, 341 F.Supp.3d 784, 791 (S.D. Ohio 2018) (holding that Ohio has "no legitimate state interest in preventing an adequate legal remedy for petitioners denied ballot access by board of electors").

When assessing the validity of ballot access laws, a court must apply the *Anderson-Burdick* test. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). Under this test, courts must analyze the "character and magnitude of the asserted injury" to the plaintiff's constitutional rights in relation to the defendant's interest in enforcing the regulation. *Anderson*, 470 U.S. at 789; *see also Libertarian Pty of Ohio v. Blackwell*, 462 F.3d 579, 587 (6th Cir. 2006) (noting that "the Court must not only determine the legitimacy and strength of each of [the state's] interests [in promulgating the litigation]; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.")

If the state regulation imposes a severe burden on the plaintiff's constitutional rights, strict scrutiny applies and the regulation will only be upheld if it is narrowly drawn to advance a state interest of compelling importance. *See Illinois State Bd. of Elections*, 440 U.S. at 184. If the regulation imposes a lesser burden, a court must weigh the burden on the plaintiff against the state's asserted interest and chosen means of pursing it. *Graveline v. Benson*, 992 F.3d 524, 535 (6th Cir. 2021).

Applying this to the case at hand, Mich. Comp. Laws § 333.27956(1) severely burdens the people's right to free political speech and free association, as it offers no remedy to challenge the municipal officer's petition signature sufficiency. There is no provision of the Michigan Regulation and Taxation of Marihuana Act ("MRTMA") that grants a petitioner the right to seek a writ of mandamus. Nor does MRTMA provide for a system to challenge the municipal officer's determination.[4] Simply put, petitioners who believe they have obtained sufficient signatures are automatically excluded from the ballot if the municipal officer strikes enough signatures to put the total count below the 5% threshold. Therefore, Mich. Comp. Laws § 333.27956(1) severely burdens an individual's right to free political speech and free association and strict scrutiny applies.

---

[4] The Michigan Court Rules only authorize an action for mandamus against a *state officer*. See Mich. Court. R. 3.305.

10

This severe burden outweighs any purported interest in ensuring its elections are run fairly and honestly. *See e.g. Taxpayers United for Assessment Cuts*, 994 F.2d at 297. These interests do not outweigh the fact that Plaintiff is not even afforded an opportunity to affirm any invalidated signatures in the petition. Because this restriction is not narrowly tailored to achieve these purposes and effectively prevents ballot access, there is a high likelihood of success on the merits and a preliminary injunction should issue.

### ii. Mich. Comp. Laws § 333.27956(1) violates Plaintiff's right to procedural due process.

The Fourteenth Amendment protects individuals against State deprivation of life, liberty, or property, without due process of law. U.S. Const. XIV, § 1.

As a threshold question for a Due Process violation, a court must assess whether the state action implicates a property or liberty interest. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 389 (6th Cir. 2020). Protected liberty interests arise from the due process clause itself and the laws of the state involved. *Codd v.* Brown, 949 F.3d 879, 882 (6th Cir. 1991). In assessing whether state law creates a protected liberty interest, the court must look at the language of the law in question. *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 406 (6th Cir. 2020) (Moore, J., dissenting). Pursuant to the Sixth Circuit:

> State-created liberty interests arise when a state places
> "substantive limitations on official discretion." A state
> substantively limits official discretion "by establishing

> 'substantive predicates' to govern official decisionmaking
> ... and, further, by mandating the outcome to be reached
> upon a finding that the relevant criteria have been met."
> The state statutes or regulations in question also must use
> "explicitly mandatory language" requiring a particular
> outcome if the articulated substantive predicates are
> present. Finally, the statute or regulation must require a
> particular substantive outcome. State-created procedural
> rights that do not guarantee a particular substantive
> outcome are not protected by the Fourteenth Amendment,
> even where such procedural rights are mandatory. *Id.*
> (quoting *Tony L. By and Through Simpson v. Childers*, 7
> F.3d 1182, 1185 (6th Cir. 2020) (internal citations
> omitted) (alteration original).

As such, state law creates a liberty interest when it leaves a state official with no discretion as to an outcome.

Applying this to the case at hand, Mich. Comp. Laws § 333.27956(1) creates a protected liberty interest. It requires the submission of an ordinance limiting the number of marihuana establishments in the community to the electors if certain thresholds are met. Stated another way, the municipal official assessing the petition has no discretion as to whether or not the proposal appears on the ballot, as long as it contains sufficient signatures and complies with Mich. Comp. Laws § 168.482(1), (4), (5), and (6). Because this leaves the appropriate municipal official with no room for discretion, a liberty interest exists and the court must assess what process is due.

The touchstone of due process is hearing and an opportunity to be heard at a meaningful time and in a meaningful manner. *See Mathews v. Eldridge*, 424 U.S.

12

319, 333 (1975). In determining what process is due, the court should assess three

factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

As established above, Mich. Comp. Laws § 333.27956(1) implicates

Plaintiff's liberty interest in having its initiative petition placed on the ballot. *See*

*e.g. Briscoe v. Kusper*, 435 F.2d 1046, 1055 (7th Cir. 1970) ("It is by now well

established that the concept of 'liberty' protected against state impairment by the

Due Process Clause of the Fourteenth Amendment includes the freedoms of speech

and association and the right to petition for redress of grievances.") Furthermore, it

implicates the right of the people to vote and associate in furtherance of the

initiative's message. Although implicating these significant interests, Mich. Comp.

Laws § 333.27956(1) offers absolutely no safeguards to protect against their

deprivation.

Mich. Comp. Laws § 333.27956 is found in the Michigan Regulation and

Taxation of Marihuana Act ("MRTMA"). Unlike the Home Rule City Act, which

expressly provides a remedy for individuals aggrieved by a city clerk's action or

inaction relating to a petition, *see* Mich. Comp. Laws § 125.25(7), MRTMA contains

no similar provision.[5] In fact, save for § 333.27956(1), MRTMA is devoid of any reference to petitioning or an individual's right to initiative.

Furthermore, the Charter Township Act, which governs Ypsilanti Township, does not contain any provision referencing initiative petitions or the process by which to challenge petition sufficiency. *See* Mich. Comp. Laws § 42.1 et seq. As such, the Charter Township Act does not provide any procedural safeguard to prevent deprivation of the right to ballot access for a MRTMA petition.

In addition, although Mich. Comp. Laws § 333.27956(1) references the Michigan Election Law, it limits incorporation of this statute to sections 488 and 482 only. Neither of these sections discuss challenges to a municipal official's determination. They deal with formatting alone.

Furthermore, no saving grace would exist even if Mich. Comp. Laws § 333.27956(1) incorporated Michigan Election Law as a whole. Section 479 of the Michigan Election law grants "any person who feels aggrieved by a determination of the **board of state canvassers**" the right to "have the determination reviewed by mandamus . . . in the supreme court." Mich. Comp. Laws § 168.479(1) (emphasis). The State Board has no say in petition sufficiency under § 333.27956(1). (In fact, the State Board is only utilized for petitions concerning constitutional amendments

---

[5] Furthermore, the petition was submitted in a charter township, not a Home Rule City. Therefore, the Home Rule City Act cannot apply herein.

and statewide legislation, *see e.g.* Mich. Comp. Laws §§ 168.471; § 168.472). As such, Michigan Election Law does not provide a petitioner with a remedy for a municipal officer's determination that the petition did not meet the 5% signature threshold.

Finally, even if mandamus was an available remedy, Plaintiff would have no legitimate opportunity to pursue it. Mich. Comp. Laws § 333.27956(1) does not require a municipal officer to turn over a canvassing report of the Initiative Petition. Therefore, Plaintiff has no way of knowing which signatures were deemed invalid and cannot reach out to the signator for an affidavit or testimony verifying that he actually signed the petition. This poses a great risk to the aforementioned rights, as it prevents Plaintiff from seeking a mandamus remedy.[6]

As such, the risk of deprivation of the right to petition (and, as a consequence, vote) is great. Given that **no** procedural safeguard exists, this risk of deprivation greatly outweighs the cost to the State for providing an adequate remedy. Numerous

---

[6] Mandamus is an extraordinary remedy that is discretionary. *Schmitt v. Husted*, 341 F.Supp.3d, 784, 789 (S.D. Ohio 2018). It will not issue unless a plaintiff shows it is entitled to the remedy. *Grabow v. Macomb Twp*, 270 Mich. App. 222, 226 (Mich. Ct. App. 2006). To do so, a plaintiff must show that (1) it has a clear legal right to performance of the specific duty sought to be compelled, (2) the defendant has a clear legal duty to perform such act, (3) the act is ministerial in nature such that it involves no discretion or judgment, and (4) the plaintiff has no other adequate legal or equitable remedy. *Barrow v City of Detroit Elect. Comm.*, 301 Mich. App. 404, 412; 836 NW2d 498 (Mich. Ct. App. 2013). Plaintiff cannot show that the municipal officer had a duty to certify the signatures if it cannot prove the validity of the signatures.

potential remedies exist. For example, the State could require the municipal officer to turn over a signature report and expressly provide a mandamus remedy.[7] In the alternative, it could require a municipal official to provide a signature report, containing a list of any and all signatures that were invalidated, and, within a designated time frame, allow a petitioner to attest to the validity of the signatures, either by having the signers attend a hearing or sign documentation affirming their signatures. Finally, it could create a challenge process, similar to the one found in Mich. Comp. Laws § 168.476. Implementation of any of these remedies would have minimal impact on the administration of government, as local governments commonly hold hearings to address grievances, such as license renewal. Simply put, any implemented procedure would have minimal fiscal or administrative impact on the government.

Therefore, Mich. Comp. Laws § 333.27956(1) violates Plaintiff's right to procedural due process and, therefore, is unconstitutional. As such, a preliminary injunction should issue.

---

[7] It should be noted that Mich. Court R. 3.305 cannot apply herein because it pertains to an action for mandamus against "a state officer." The Township Clerk is not a "state officer."

**B. Plaintiff will suffer irreparable injury absent an injunction.**

If this Court does not grant the injunction, Plaintiff and those similarly situated will suffer irreparable injury, as they will be effectively barred from gaining access to the ballot, as they have no way to challenge a municipal officer's determination.

It is well settled that even minimal loss of First Amendment freedoms "unquestionably constitutes irreparable injury." *Libertarian Pty of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *Eldrod v. Burns*, 427 U.S. 347, 373 (1976); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989); *N.Y. Times v United States*, 403 U.S. 713, 715 (1971) (Black, J., concurring). As such, because Plaintiff will likely be deprived of its First and Fourteenth Amendment rights to free political speech if enforcement of § 333.27956(1) is not enjoined under the circumstances, Plaintiff will suffer irreparable harm.

Furthermore, citizens of the Township will be harmed, absent an injunction, as they will be denied the opportunity to vote and decide if they want to permit marihuana businesses in the Township. The advent of these businesses could lead to a decrease in property values and affect the safety and general welfare of the Township's citizens, as the businesses may cause an increase in crime and public nuisances. As such, Plaintiff, and others similarly situated, would be irreparably harmed absent the grant of a preliminary injunction.

**C. The grant of preliminary injunction serves the public interest, as it will prevent the application of an unconstitutional law to similarly situated plaintiffs and cause little to no harm to the public interest.**

The questions of harm to others and serving the public interest are inversely proportional to the likelihood of success on the merits. *Husted*, 751 F.3d at 412 (quoting *Connection Dist. Co. v. Reno*, 154 F.3d 281, 288 (1998)). "[B]ecause the questions of harm to the parties and the public interest generally cannot be addressed properly in the First Amendment context without first determining if there is a constitutional violation, the crucial inquiry often is, and will be in this case, whether the state action at issue is likely to be found constitutional." *Id.*   The primary factor showing irreparable harm to Plaintiff, i.e. the denial of its constitutional rights, also shows why the public interest is furthered by an injunction. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that irreparable harm and public interest "merge" when the government is a party). "[T]he public interest lies in a correct application of the federal constitutional and statutory provisions upon which claimants have brought this claim and ultimately . . . upon the will of the people of Michigan being effected in accordance with Michigan law." *Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006) (internal quotation and citation omitted).   It logically flows that "enforcement of an unconstitutional law is always contrary to the public interest." *Pursuing Am.'s Greatness v. F.E.C.*, 831 F.3d 500,

511 (D.C. Cir. 2016) (quoting *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013)).

Given that Mich. Comp. Laws § 333.27956(1) effectively deprives Plaintiff of its First Amendment and Fourteenth Amendment rights by providing no process to challenge a municipal officer's sufficiency determination of petitions, it is in the public interest to enjoin Defendants to enforcing it. This allows petitioners to have a fair process and unbiased process when seeking ballot access. Additionally, Defendant will suffer little to no harm as a result of the injunction, as this is a single ballot initiative proposition that may or may not be enacted by the voters.

As such, a preliminary injunction and/or temporary restraining order should issue until a disposition of this case on the merits.

## IV.   CONCLUSION

Given that Plaintiff has shown a high likelihood of success on the merits that Mich. Comp. Laws § 333.27956(1) violates its constitutional rights to free speech and assembly and Defendants would be minimally damaged by placing the initiative on the ballot, Defendants should be enjoined from barring Plaintiff ballot access. At Exhibit 6, Plaintiff has attached a Proposed Preliminary Injunction to this Motion for the Court's consideration.

WHEREFORE, Plaintiff respectfully requests that this Court:

(5) Grant Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order:

(6) Order Plaintiff's ballot initiative be placed on the August 2, 2022 ballot;

(7) Award Plaintiff its attorney fees in having to bring this lawsuit and Motion; and

(8) Any other relief this Court deems just.

Respectfully Submitted,

Dated:  May 6, 2022

/s/ Hannah Stocker

By:  _____

Hannah Stocker (P82847)
23332 Farmington Road, #98
Farmington, MI 48336
(248) 252-6405 (telephone)
Hannah@stockerlawpllc.com